Daniel E. Macken, J.
May 23, 1963 defendant issued to Webaco Oil Company, Inc. (Webaco) a group insurance policy insuring against accidental death and dismemberment those of its employees who chose to participate. By its terms the policy was effective as of November 1, 1962. The policy contained a schedule of the amounts of insurance available under the policy based on the employee’s annual rate of earnings. Insofar as.applicable to this case the schedule provided coverages of up to $40,000 for employees earnings $5,000 but less than $7,500, $60,000 for those, earning $7,500 but less than $10,000, and $80,000 for those earning $10,000 but less than $12,500.
Under the prescribed procedure each employee who desired the insurance was to sign a so-called employee information card containing his name and that of his beneficiary and the amount of insurance requested. These cards were retained by Webaco and made no reference to the amount of the employees’ earnings. Webaco in turn furnished the defendant with the names of its employees to be covered and the amount of insurance. It did not and was not required to state to the defendant the amount of the employees’ earnings. No employee information card pertaining to Treuthart has been produced and, of two such cards relating to other employees, one purports to be signed and the other not. In any event, whether written or otherwise, it appears and I find that Treuthart applied for insurance in the amount of $80,000 and a certificate was issued to him, also effective November 1, 1962, stating that as to him, such insurance in the principal ;sum of $80,000 was in force and naming the plaintiff, his wife, as beneficiary. From then until his accidental death January 12, 1968, Treuthart paid the full amount of premiums required for that coverage.
At the time the certificate of insurance was issued, Treuthart’s earnings were between $5,000 and $7,500 entitling him to coverage of $40,000, and at the time of his death his earnings were less than $10,000 a year. Before issuing'the certificate defendant made no investigation of Webaco’s records to determine the amount of his earnings and I find that although readily available by inspection, information as to the amount of Treuthart’s 'earnings first came to the attention of the defendant after his death. Defendant thereupon paid plaintiff $40,000 without prejudice to the maintenance of this action which is brought to recover $40,000, the balance of the coverage stated in the certificate.
In its letter declining to pay in excess of $40,000 the defendant said: ‘ ‘ When his coverage became effective on 11/1/62, the Group Policyholder, through a clerical error, had listed him as *559 being covered for $80,000 and he had been making contributions on that amount since the effective date. Enclosed, also, is page 10 of the contract, which describes the procedure concerning clerical errors.” In section 3 of article VI, entitled Miscellaneous Provisions, on page 10 of the policy, appears the following: “ Neither clerical error (whether by the Policyholder, by any of the Participant Employers, or by the Insurance Company) in keeping any records pertaining to the insurance, nor delays in making entries thereon, shall invalidate insurance otherwise validly in force or continue insurance otherwise validly terminated, but upon discovery of such error or delay an equitable adjustment of premiums shall be made.”
Section 3 of Miscellaneous Provisions goes on to say: “If any relevant facts pertaining to any individual to whom the insurance relates shall be found to have been misstated, an equitable adjustment of premiums shall be made, and if such misstatement affects the existence or the amount of insurance, the true facts shall be used in determining whether insurance is in force under the terms of this policy and in what amount.”
Section 4 of Miscellaneous Provisions provides the following: “ This policy constitutes the entire contract between the parties, and any statement made by the Policyholder or by any employee shall be deemed a representation and not a warranty. No such statement shall avoid the insurance or reduce the benefits under this policy or be used in defense to a claim unless it is in writing, nor shall any such statement of the Policyholder, except a fraudulent misstatement, be used to void this policy after it has been in force for two years from the date of its issue, nor shall any such statement of any employee eligible for coverage under the policy, except a fraudulent misstatement, be used in defense to a claim for loss incurred or commencing after the insurance coverage with respect to which claim is made has been in effect for two years.”
There is no evidence of any clerical error “ in keeping any records pertaining to the insurance ” or “ delays in making entries thereon ”. Webaco at all times had adequate records of Treuthart’s earnings. Treuthart’s application for $80,000 of coverage and Webaco’s statement to the defendant that he was to be insured for $80,000 constituted representations that Treuthart was eligible for such insurance. These representations were false but there is no evidence, nor is any claim made, that the misstatements were fraudulently made. On the contrary, the fact that of the 25 to 30 employees originally insured under the policy at least three were issued certificates in excess of the amounts to which their earnings classification entitled *560 them, would indicate the existence of confusion on the part of Webaco and its employees as to the provisions of the policy.
The issue presented is whether defendant’s alleged defense is barred by the incontestability provisions of the policy. In Simpson v. Phoenix Mut. Life Ins. Co. (24 N Y 2d 262) plaintiff was the beneficiary of a group life insurance policy containing a provision that to be eligible for such insurance employees were to be full-time employees regularly working at least 30 hours per week. After his death, the defendant first learned that plaintiff’s husband was not such an eligible employee. In holding that plaintiff was entitled to recover as beneficiary of her husband’s policy, the court held that the regular employment requirement was a condition of insurance rather than a limitation of the risk and, as such, barred by the policy’s incontestability clause. In so holding, the court said (p. 267): “Bisks which are considered limitations are those which could not be ascertained by the insurer by investigation at the time the policy of insurance was issued. * * # If the additional risk to the insurer of issuing a policy to a particular applicant could have been discovered at the time the contract was entered into, the insurer is precluded from raising this fact as a defense after the period provided for in the incontestable clause has elapsed. It is only those risks which could not be ascertained at the time of contracting which can properly be viewed as a limitation on the risk of insurance. Where the insurer cannot guard against assuming a risk it does not desire to insure by the .simple expedient of investigating, such as risks of death in noncommercial aviation and while on active military duty, then the risk is properly classified as a limitation for purposes of analysis with respect to the incontestable clause (Insurance Law § 155, subd. 2).
" The hallmark of the distinction between conditions and limitations is discoverability.”
It may be noted that in Simpson a life insurance policy was involved which contained the broad incontestability clause required by subdivision (a) of section 161 of the Insurance Law (30 A D 2d 265, 267). Such a clause was not required in the present policy. (Insurance Law, § 162; § 155, subd. 1, par. [b].)
I conclude that the policy provision with respect to eligibility based on the amount of earnings was a condition of insurance and not a limitation of the risk and that the nonfraudulent misstatements by Webaco and Treuthart that the latter was eligible for $80,000 of insurance may not be asserted as a defense *561 to this action under the incontestability provisions of the policy. It follows that plaintiff is entitled to judgment in the sum of $40,000 with interest from January 23, 1968, the date of receipt by defendant of proof of death, as follows: at the rates of 6% through June 30, 1968, 714% from July 1, 1968 through February 15, 1969, and 7%% from February 16, 1969. (Insurance Law, § 166-b; Dime Sav. Bank v. Carlosso, 58 Misc 2d 821; 3 NYCRR4.1.)